UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**NH LEARNING SOLUTIONS
CORPORATION**, a Michigan corporation, and
**5P NH HOLDING COMPANY, LLC**, a
Texas limited liability company,

        Plaintiffs,

Case No. 2:20-cv-10904
Hon. _____

v.

**NEW HORIZONS FRANCHISING GROUP, INC.**,
a Delaware corporation,

        Defendant,

## COMPLAINT & JURY DEMAND

Plaintiffs, NH Learning Solutions Corporation and 5P NH Holding Company,

LLC, by and through their attorney, Gregory S. Pierce, for their Complaint against

Defendant, New Horizons Franchising Group, Inc., states as follows:

### PARTIES, JURISDICTION AND VENUE

1.    NH Learning Solutions Corporation ("NHLS") is a Michigan

corporation with its principal place of business at 14115 Farmington Road, Livonia,

Michigan 48154.

2.     5P NH Holding Company, LLC ("5PNH") is a Texas limited liability company with its principal place of business at 300 E. Highland Mall Boulevard, Suite 100, Austin, Texas 78752.

3.     New Horizons Franchising Group, Inc. ("NHFG") is a Delaware corporation with its registered agent located at 251 Little Falls Drive, Wilmington, Delaware 19808; its principal place of business at 1900 S. State College Boulevard, Suite 450, Anaheim, California 92806; and its Chief Executive Officer's office located at 2502 Rocky Point Drive, Suite 500, Tampa, Florida 33607.

4.     The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     The Court has diversity jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. §1332.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## STATEMENT OF FACTS

7.     NHLS and 5PNH are training companies that provide instructor-led on-line live training in the use of business applications, business skills, information technology ("IT"), leadership and management and business process optimization through franchise locations under the tradename New Horizons Computer Learning Centers.

8. NHFG is the franchisor of the New Horizons Computer Learning Centers licenses.

9. NHLS owns fifteen franchise licenses, which sells and delivers training throughout the Midwest and Northeast United States.

10. 5PNH owns twenty-two franchise licenses, which sells and delivers training throughout the United States.

11. NHFG and NHLS or their predecessors in interest have operated as franchisor and franchisee for more than twenty-five years.

12. NHFG and 5PNH or their predecessors in interest have operated as franchisor and franchisee for more than sixteen years.

13. For over ten years, NHLS and 5PNH have delivered instructor-led on-line live training to thousands of students via online internet platforms on behalf of the entire US New Horizons Franchise network.

14. From 2015 until June 1, 2019, NHLS and 5PNH delivered much of their live training through a company known as Global OLL, LLC ("Global OLL").

15. From 2009 until the formation of Global OLL, NHLS and 5PNH delivered their on-line instructor-led live training through various other entities.

16. Global OLL was formed by NHLS, 5PNH and two other New Horizons Computer Learning Centers franchise group owners in 2015 for the purpose of

creating a platform to deliver live computer training via the internet using each member's instructors to teach classes.

17.     After its formation, Global OLL permitted all franchisees of NHFG to purchase student seats from its schedule of live computer software training classes.

18.     NHFG, also, purchased seats from Global OLL through its own corporately owned locations and inside sales team.

19.     In early 2019, NHFG contacted NHLS and 5PNH expressing its plan to have Global OLL's members dissolve the company, join its newly formed on-line live instructor-led delivery platform and take over the entirety of the live online delivery business for all New Horizons franchisees.

20.     In that regard, NHFG sent its proposed Participation Agreement ("PA") in its newly created New Horizons Virtual Delivery Program ("NHVDP") to NHLS at its Michigan Offices.

21.     Similarly, NHFG sent a near identical version of the PA to 5PNH at its Texas offices.

22.     After several rounds of negotiation and revisions, all of which were conducted by NHLS at its Livonia, Michigan headquarters, NHLS and NHFG

agreed to a Participation Agreement ("NHLS PA") in the NHVDP dated June 1, 2019.  See, NHLS PA, **Exhibit A.**[1]

23.     Likewise, after several rounds of negotiation and revisions, all of which were conducted by 5PNH at its Austin, Texas headquarters, 5PNH and NHFG agreed to a Participation Agreement ("5PNH PA") in the NHVDP dated June 1, 2019 nearly identical to the NHLS PA.  See, 5PNH PA, **Exhibit B.**

24.     NHLS executed the NHLS PA from its President and CEO's Michigan residence.

25.     5PNH executed the 5PNH PA from its Senior Vice President's home in Boerne, Texas.

26.     Under the terms of the PAs, NHLS and 5PNH were required to abandon the Global OLL delivery platform and use the NHVDP as "the exclusive platform used by Franchisee for the sale and delivery of all "VIFT" (defined as public open enrollment virtual instructor facilitated training offered by Franchisee to its customers[)]", and for them to "publish and promote Franchisor's VDP schedule and...not offer a competing schedule...".  Exhibit A, ¶1 and Exhibit B, ¶1.

27.     The two other New Horizons franchise group owners that were formerly part of Global OLL also signed PAs with NHFG.

---

[1] Exhibits A through D to the Complaint are subject to confidentiality agreements. Accordingly, they willed be filed under seal after service of the lawsuit, unless Defendant agrees to permit public filing of them.

28.     To entice NHLS and 5PNH to abandon the Global OLL delivery platform, NHFG provided financial incentives to NHLS and 5PNH in the PAs.

29.     Under the basic rubric of the PAs, NHLS and 5PNH would purchase class seats from NHFG at the prices set forth in the VDP Rules, the pricing of which were based on the category of class purchased, i.e., Apps A, Apps B, Tech A, Tech B, Tech C, etc.  See, second and third page of VDP Rules entitled "New Horizons Virtual Delivery Program", attached to Exhibits A and B.

30.     Further, in the NHLS PA, NHFG agreed at paragraph 5(a) that:

(a) For the period starting on the Effective Date and ending on November 30, 2020, Franchisor agrees to utilize, and Franchise[e] agrees to provide, a minimum number of Franchisee's instructors per day as set forth below:

| Type of Instructor | Minimum Instructors per Day |
|---|---|
| Apps | 3 |
| Tech | 10 |

31.     In the 5PNH PA, NHFG agreed at paragraph 5(a) that:

(a) For the period starting on the Effective Date and ending on November 30, 2020, Franchisor agrees to utilize, and Franchise[e] agrees to provide, a minimum number of Franchisee's instructors per day as set forth below:

| Type of Instructor | Minimum Instructors per Day |
|---|---|
| Apps | 6 |
| Tech | 15 |

32.     This difference in utilization of "Minimum Instructors per Day" is one of only two differences between the NHLS PA and 5PNH PA.

33.    For the use of NHLS' and 5PNH's instructors in the NHVDP, both franchisees were to be paid the prices set forth in the VDP Rules.  See, third and fourth page of VDP Rules entitled "New Horizons Virtual Delivery Program", attached to Exhibits A and B.

34.    This system of minimum class delivery would ensure the monthly payments to both NHLS and 5PNH for each party's respective minimum instructor delivery would exceed the average cost of seat consumption each company formerly averaged under the Global OLL platform, resulting in a profit to each company as incentive to join the NHVDP.

35.    Before execution of the NHLS' and 5PNH's respective PAs, NHFG represented to NHLS and 5PNH that the terms of all other NHVDP participants' PAs in the program would have no effect on their ability to fulfill the commitments of the NHLS and 5PNH PAs.

36.    This representation was false.

37.    In April 2019, prior to the time NHLS and 5PNH agreed to their respective PAs, NHFG had already agreed to a PA with another New Horizons franchise group owner, Integrated Learning Solutions, LLC ("ILS").

38.    This PA gave ILS the right to select the classes its instructors would teach on the NHVDP schedule before all other participants, or right of first refusal.

39.     NHFG knew or should have known that this right of first refusal in the pre-existing PA with ILS made it impossible for NHLS and 5PNH to achieve the contractually obligated instructor utilization minimums and, in turn, the expected profits under their respective PAs in the NHVDP.

40.     NHFG did not disclose its arrangement with ILS prior to getting NHLS and NHFG to agree to their NHVDP PAs.

41.     Neither NHLS, nor 5PNH would have entered into the PAs if NHFG had not made the misrepresentation that the terms of all other NHVDP participants' PAs in the program would have no effect on their ability to fulfill the commitments in the NHLS and 5PNH PAs.

42.     In June 2019, the parties began operating under the PA and VDP Rules.

43.     It became quickly apparent that it would be difficult to implement the NHVDP and its Rules under the terms of the PAs because of the right of first refusal granted to ILS of which NHLS and 5PNH had previously not been aware.

44.     After learning of ILS' right of first refusal in late June of 2019, NHLS and 5PNH objected and insisted on an Amendment to all PA's in the NHVDP that would eliminate the ILS right of first refusal for instructor assignments and simplify the program.

45.     Accordingly, NHLS and 5PNH executed separate, but near identical amendments ("Amendments") to their respective PAs with NHFG with an effective

date of August 1, 2019. See, NHLS' First Amendment to Participation Agreement,

**Exhibit C**, and 5PNH's First Amendment to Participation Agreement, **Exhibit D**.

46. The Amendments changed the terms of the PAs to a system where

NHFG's minimum monthly utilization of NHLS and 5PNH instructors would be 2%

over their monthly seat consumption for each category of classes offered under the

NHVDP, thereby guaranteeing that both would realize substantial profits.

47. Paragraph 4 of the Amendments (modifying paragraph 5 of the original

PAs) states:

> 5. Use of Franchisee's Instructors for Delivery:
>
> (a) Commencing on August 1, 2019 and ending on December 31, 2020, Franchisor agrees to utilize, and Franchisee agrees to provide, Franchisee instructors to supply training days on a monthly basis (the "Minimum Instructor Commitment"). The Minimum Instructor Commitment shall be expressed as a percentage and calculated by comparing (i) the monthly classroom seats purchased by Franchisee to (ii) the total classroom seats collectively purchased by all VDP participants during the same month, then adding 2% to such calculated percentage, and then applying such percentage to the total number of training days collectively purchased by all VDP participants during such month. The Minimum Instructor Commitment shall be calculated and applied separately for each category of classes offered under the VDP program; provided, however, that Application Courses classified as A and B shall be combined, and Technical Courses classified as A and B shall also be combined.
>
> (b) For example, if Franchisee purchased 400 classroom seats of Tech A classes during a month and all VDP participants purchased 2,000 classroom seats of Tech A classes during such month, the Minimum Instructor Commitment would be 22% (400 Tech A classroom seats divided by 2,000 total Tech A classroom seats, plus

2%), and Franchisor would utilize Franchisee's instructors for 22% of the total training days of Tech A classes purchased by all VDP participants during such month.

(c) As of August 1, 2019, Franchisor will update the VDP Rules to reflect that Franchisor shall pay each VDP delivery participant a monthly participation fee (the "Participation Fee"), calculated by dividing Net Classroom Seat Revenue by Total Delivery Days and multiplied by the number of trainer delivery days for each VDP delivery participant. For purposes of this calculation, "Net Classroom Seat Revenue" means the total monthly revenue generated from the sale of classroom seats minus monthly VDP administration fees charged to VDP participants, and "Total Delivery Days" means the total number of days that each class was delivered during such month. The Participation Fee shall be calculated and applied separately for each category of classes offered under the VDP program.

(d) For example, if the sale of Tech A classes generated $200,000 in July, VDP Administration Costs were $5,000 in July and a total of 250 days of Tech A classes were delivered in July, then each VDP delivery participant would receive a Participation Fee in July of $780 multiplied by the number of trainer delivery days for each VDP delivery participant, calculated as $200,000 minus $50,000 and then divided by 250. See, Exhibits C and D, pp. 1-2.

48.    For most months after implementation of the August 1, 2019 Amendments, NHFG failed to meet the Minimum Instructor Commitment to both NHLS and 5PNH.

49.    Further, in months where NHFG did meet the Minimum Monthly Commitment, it did so only by manipulating the number of classes on the NH VDP schedule by reducing the average number of students per class below 12; thereby, increasing the number of classes offered on the NHVDP schedule.

50.     By reducing the number of students per class, NHFG correspondingly reduced the average revenue per class.

51.     These actions either reduced or eliminated the expected profits to NHLS and 5PNH.

52.     Further, increasing the number of classes by reducing the average number of students per class violated NHFG's own VDP Rules, which contemplated an average class size of 16 students.

53.     These actions by NHFG materially violated the terms and conditions of the PAs and Amendments it signed with both NHLS and 5PNH, resulting in substantial damages.

54.     From October 2019 through February 2020, NHLS and 5PNH sent multiple notices of default to NHFG, submitted numerous proposals that would have cured the defaults and reduce or eliminate the possibility of any future defaults under the NHVDP and expended significant amounts of time and cash traveling to meet with NHFG in an effort to resolve this matter.

55.     NHFG rejected these proposals and failed to cure the defaults.

56.     Due to the uncured material defaults of the PAs and Amendments by NHFG, NHLS and 5PNH will withdraw their participation in the NHVDP as of April 13, 2020.

## COUNT I

### NHLS' BREACH OF THE PARTICIPATION AGREEMENT CLAIM

57.     NHLS incorporates the preceding paragraphs.

58.     Under the terms of the NHLS PA and its Amendment, NHFG had the obligation to meet the Minimum Instructor Delivery requirements set forth therein and to follow the VDP Rules.

59.     NHFG breached these obligations to NHLS.

60.     NHLS has sustained substantial damages as a direct and proximate cause of NHFG's breaches of the NHLS PA and Amendment.

**WHEREFORE**, NHLS requests entry of a Judgment against NHFG in whatever amount in excess of $75,000.00 that a jury decides it is entitled to, plus costs, interest and attorneys' fees.

## COUNT II

### NHLS' CLAIM FOR FRAUDULENT MISREPRESENTATION

61.     NHLS incorporates the preceding paragraphs.

62.     Before execution of the NHLS PA, NHFG represented to NHLS that the terms of all other NHVDP participants' PAs in the program would have no effect on their ability to fulfill the commitments of the NHLS PA.

63.     This representation was false.

12

64. NHFG knew the representation was false when it made it, or made the representation recklessly without knowledge of its truth as a positive assertion.

65. NHFG made the representation with the intention to induce NHLS' reliance on it in entering into the NHLS PA.

66. NHLS, in fact, did rely on the NHFG's representation in deciding to enter into the NHLS PA.

67. As a direct and proximate result of NHFG's false representation, NHLS sustained substantial damages.

**WHEREFORE**, NHLS requests this Honorable Court order the NHLS PA and its Amendment void and enter a Judgment against NHFG in whatever amount in excess of $75,000.00 that a jury decides it is entitled to, plus costs, interest and attorneys' fees.

## COUNT III

## 5PNH'S BREACH OF THE PARTICIPATION AGREEMENT CLAIM

68. 5PNH incorporates the preceding paragraphs.

69. Under the terms of the 5PNH PA and its Amendment, NHFG had the obligation to meet the Minimum Instructor Delivery requirements set forth therein and to follow the VDP Rules.

70. NHFG breached these obligations to 5PNH.

71.     5PNH has sustained substantial damages as a direct and proximate cause of NHFG's breaches of the 5PNH PA and Amendment.

**WHEREFORE**, 5PNH requests entry of a Judgment against NHFG in whatever amount in excess of $75,000.00 that a jury decides it is entitled to, plus costs, interest and attorneys' fees.

## COUNT IV

## 5PNH'S CLAIM FOR FRAUDULENT MISREPRESENTATION

72.     5PNH incorporates the preceding paragraphs.

73.     Before execution of the 5PNH PA, NHFG represented to 5PNH that the terms of all other NHVDP participants' PAs in the program would have no effect on their ability to fulfill the commitments of the 5PNH PA.

74.     This representation was false.

75.     NHFG knew the representation was false when it made it, or made the representation recklessly without knowledge of its truth as a positive assertion.

76.     NHFG made the representation with the intention to induce 5PNH's reliance on it in entering into the 5PNH PA.

77.     5PNH, in fact, did rely on the NHFG's representation in deciding to enter into the 5PNH PA.

78.     As a direct and proximate result of NHFG's false representation, 5PNH sustained substantial damages.

**WHEREFORE**, NHLS requests this Honorable Court order the 5PNH PA and its Amendment void and enter a Judgment against NHFG in whatever amount in excess of $75,000.00 that a jury decides it is entitled to, plus costs, interest and attorneys' fees.

Respectfully submitted,

By: /s/Gregory S. Pierce
Gregory S. Pierce (P45552)
Attorney for Plaintiffs
14115 Farmington Road
Livonia, MI 48154
(734) 853-2043
gregory.pierce@nhls.com

Dated: April 9, 2020

## JURY DEMAND

Plaintiffs hereby demand trial of the aforementioned claims by a jury.

Respectfully submitted,

By: /s/Gregory S. Pierce
Gregory S. Pierce (P45552)
Attorney for Plaintiffs
14115 Farmington Road
Livonia, MI 48154
(734) 853-2043
gregory.pierce@nhls.com

Dated: April 9, 2020