UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**NH LEARNING SOLUTIONS CORPORATION**,
a Michigan corporation, and
**5PNH HOLDING COMPANY, LLC**,
a Texas limited liability company,,

                      Plaintiffs,

v.

**NEW HORIZONS FRANCHISING GROUP, INC**.,
a Delaware corporation,

                      Defendant.

Case No.: 2:20-cv-10904
Justice Hon. Linda V. Parker

**MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 9 U.S.C. § 4, Defendant New Horizons Franchising Group, Inc. ("New Horizons") respectfully moves the Court for an Order compelling arbitration of Plaintiffs' claims—and dismissing, or, in the alternative, staying, these proceedings—in accordance with the binding and enforceable contractual arbitration provisions contained in the franchise agreements Plaintiffs entered into with Defendant. A Memorandum in Support is attached.

New Horizons sought concurrence in this Motion from Plaintiffs in a conference among the parties' attorneys on May 26, 2020 during which New Horizons explained the nature of the motion and its legal basis. Plaintiffs declined to concur.

Dated: June 3, 2020

LEWIS BRISBOIS BISGAARD & SMITH LLP
633 W. 5th Street, Suite 4000
Los Angeles, California 90071
Tel: 213.250.1800
Fax: 213.250.7900
Leo A. Bautista
*Admitted* (Cal. Bar No. 149889)
leo.bautista@lewisbrisbois.com
Joshua S. Hodas, Ph.D.
*Admitted* (Cal. Bar No. 250802)
josh.hodas@lewisbrisbois.com
John L. Barber
*Admission Pending*
(Cal. Bar No. 160317)
john.barber@lewisbrisbois.com

LEWIS BRISBOIS BISGAARD & SMITH LLP
1375 E. 9th Street, Suite 2250
Cleveland, Ohio 44114
Tel: 216.344.9422
Fax: 216.344.9421
John R. Christie
MI State Bar no. P81738
John.Christie@lewisbrisbois.com

/s/ Joshua S. Hodas
Joshua S. Hodas
*Attorneys for Defendant*

## STATEMENT OF ISSUES PRESENTED

1) Should the Court compel Plaintiffs to arbitrate this dispute under the arbirtration clauses contained in the parties' Franchise Agreements.

> Defendant/Movant's Position: Yes

> Plaintiffs/Opponents' Position: No

2) If the Court decides to compel Plaintiffs to arbitrate this dispute, should the Court dismiss the case, rather than stay it pending arbitration?

> Defendant/Movant's Position: Yes

> Plaintiffs/Opponents' Position: No

## STATEMENT OF CONTROLLING AUTHORITY

AS TO ISSUE 1:

> FEDERAL ARBITRATION ACT, 9 U.S.C. § 2, *et seq.*.
>
> *Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000), *cert. denied*, 531 U.S. 1148 (2001).
>
> *Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568 (6th Cir. 2003).
>
> *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983).

AS TO ISSUE 2:

> *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000).

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ..................................................... i

STATEMENT OF CONTROLLING AUTHORITY .................................. ii

TABLE OF CONTENTS .................................................................. iii

TABLE OF AUTHORITIES ............................................................. iv

I.    INTRODUCTION ....................................................................1

II.   LEGAL STANDARD................................................................2

  A. The Federal Arbitration Act Requires Parties to Arbitrate Where They Have Contractually Agreed to Do So........................................2

  B. The Sixth Circuit Employs a Four-Factor Test Governing Motions to Compel Arbitration...............................................................3

  C. There Is a Strong Presumption in Favor of Arbitration ............................5

  D. Arbitration Agreements Must be Given the Broadest Possible Scope.......6

  E. State Law Cannot Limit Application of the FAA ....................................7

  F. Choice of Law .......................................................................7

III.  FACTS AND ARGUMENT .........................................................9

  A. Plaintiffs Agreed to Arbitration of Disputes in Twenty-Seven Franchise Agreements with New Horizons, Each and Every One of Which Included a Valid and Enforceable Arbitration Agreement.......................................9

  B. This Dispute is Within the Scope of the Arbitration Clauses in the Franchise Agreements ...............................................................12

  C. No Federal Statutory Claims are at Issue Here ......................................15

  D. The Court Should Dismiss the Action Because All of the Claims Here Are Arbitrable.................................................................15

IV.   CONCLUSION .................................................................16

# TABLE OF AUTHORITIES

**CASES**

*American Express Co. v. Italian Colors Restaurant*,
133 S.Ct. 2304 (2013) .........................................................................5, 6

*AT&T Techs. v. Commc'ns Workers of America*,
475 U.S. 643 (1986) ............................................................................6, 7

*Chrysler Corp. v. Skyline Industrial Services, Inc.*,
448 Mich. 113, 528 N.W.2d 698 (Mich. 1995) ...................................8

*Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*,
706 F.2d 155 (6th Cir. 1983) ...............................................................12

*Cooper v. MRM, Inc.*,
367 F.3d 493 (6th Cir. 2004) ...............................................................5

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985).............................................................................6

*Doctor's Assoc., Inc. v. Casarotto*,
517 U.S. 681 (1996).............................................................................7

*Fazio v. Lehman Bros., Inc.*,
340 F.3d 386 (6th Cir. 2003) ...............................................................6

*Glazer v. Lehman Bros., Inc.*,
394 F.3d 444 (6th Cir. 2005) ...............................................................3, 5

*Great Earth Cos. v. Simons*,
288 F.3d 878 (6th Cir. 2002) ...............................................................5, 7

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)...............................................................................4

*Green v. Ameritech Corp.*,
200 F.3d 967 (6th Cir. 2000) ...............................................................16

*Highlands Wellmont Health Network v. John Deere Health Plan*,
350 F.3d 568 (6th Cir. 2003) ...............................................................6, 12

*Javitch v. First Union Sec., Inc.*,
315 F.3d 619 (6th Cir. 2003) ...............................................................4

*Mill's Pride, Inc. v. Continental Insurance Co.*,
300 F.3d 701 (6th Cir. 2002) ...............................................................8

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1, 103 S. Ct. 927 (1983).......................................................5

*Mounts v. Midland Funding L.L.C.*,
257 F. Supp. 3d 930 (E.D. Tenn. 2017)...............................................4

*Ohio National Life Insurance Co. v. United States*,
922 F.2d 320 (6th Cir. 1990) ...............................................................4

*Preston v. Ferrer*,
    552 U.S. 346 (2008)................................................................................7

*Richmond Health Facilities v. Nichols*,
    811 F.3d 192 (6th Cir. 2016) ...............................................................8

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
    78 F.3d 1125 (6th Cir. 1996) ...............................................................4

*Rogers v. Stratton Indus., Inc.*,
    798 F.2d 913 (6th Cir. 1986) ...............................................................4

*Savers Property & Casualty Ins. Co. v. National Union Fire Ins. Co.*,
    748 F.3d 708 (6th Cir. 2014) ...............................................................5

*Shearson/American Express v. McMahon*,
    482 U.S. 220 (1987)............................................................................15

*Simon v. Pfizer Inc.*,
    398 F3d 765 (6th Cir. 2005) ................................................................3

*Solvay Pharm, Inc v. Duramed Pharm, Inc*,
    442 F3d 471 (6th Cir. 2006) .............................................................1, 7

*Stone Surgical, LLC v. Stryker Corp.*,
    858 F.3d 383 (6th Cir. 2017) ...............................................................8

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000), *cert. denied*, 531 U.S. 1148 (2001) ........... *passim*

*United States v. Ritchie*,
    15 F.3d 592 (6th Cir. 1994) .................................................................4

**Statutory Authorities**
Federal Arbitration Act, 9 U.S.C. § 2, *et seq.* ..............................2, 3, 5, 6

**ADDITIONAL AUTHORITIES**
Restatement (Second) of Conflict of Laws § 187 (1971) ..........................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Over the last 25 years, Plaintiffs NH Learning Solutions Corporation ("NHLS") and

5PNH Holding Company LLC ("5PNH") have, taken together, entered into no fewer

than thirty-five (35) franchise agreements with Defendant New Horizons

Franchising Group Inc. ("New Horizons") to participate in New Horizon's network

of facilities offering high-end technical training related to computer system and

network management both onsite at their individual facilities, and over the internet.

Each and every one of those franchise agreements includes a binding and

enforceable agreement to arbitrate any dispute "arising out of or relating to [the

agreement] or its breach."

The Federal Arbitration Act requires courts to interpret the scope of such

arbitration agreements extremely broadly, including to encompass disputes that do

not even implicate breach of the contracts containing them. Indeed, the Sixth Circuit

has held that "only an express provision excluding a specific dispute, or the most

forceful evidence of a purpose to exclude the claim from arbitration, will remove the

dispute from consideration by the arbitrators."[1]

Recently, the parties entered into a series of agreements related to the

administration and staffing of the internet/video-based course offerings. Those

---

[1] *Solvay Pharm, Inc v. Duramed Pharm, Inc*, 442 F3d 471, 482 n.10 (6th Cir. 2006).

agreements directly reference, incorporate, and rely on the franchise agreements, and the relationships created by those agreements could exist only in connection with the franchises.

Plaintiffs, nevertheless, are attempting to avoid their obligation to arbitrate by suing only on those new agreements, which do not contain explicit arbitration clauses. As set forth below, however, the facts are clear that Plaintiffs' claims are all ones "arising out of or relating to" the franchise agreements, and the law of this Circuit is clear that Plaintiffs must be compelled to arbitrate this dispute.

## II.   LEGAL STANDARD

### A.   The Federal Arbitration Act Requires Parties to Arbitrate Where They Have Contractually Agreed to Do So

The Federal Arbitration Act ("FAA") provides that:

> **A written provision in . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof**, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). The FAA extends to the furthest reaches of Congress' Commerce Power and is applicable as long as the contract at issue *affects* interstate commerce. *Id*. ("contract evidencing a transaction involving commerce"). The FAA further provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties **stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement**, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

### B.    The Sixth Circuit Employs a Four-Factor Test Governing Motions to Compel Arbitration

Courts in this circuit consider four factors in evaluating a motion to compel arbitration under the FAA:

> *First*, it must determine whether the parties agreed to arbitrate; *second*, it must determine the scope of that agreement; *third*, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and *fourth*, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), *cert. denied*, 531 U.S. 1148

(2001) (emphasis added); *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir.

2005) (quoting *Stout*).[2]

---

[2] Some parties and courts prefer to treat a motion to stay proceedings and compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction—on the theory that a valid arbitration clause robs the plaintiff of standing to initiate suit in federal court and/or robs the court of subject matter jurisdiction. *Simon v. Pfizer Inc.*, 398 F3d 765, 773 (6th Cir. 2005) ("a compulsory arbitration provision divests the District Court of jurisdiction").

Thus, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a *limited* review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (emphasis added). The party opposing arbitration has the burden to show that the agreement is not enforceable. *Mounts v. Midland Funding L.L.C.*, 257 F. Supp. 3d 930 (E.D. Tenn. 2017) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)). "In order to meet this burden, 'the party opposing arbitration must show a genuine issue of material fact

---

To the extent this Court takes that view, Defendants note that "where subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) (internal quotation marks omitted).

Further, "[m]otions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id.* In considering whether jurisdiction has been established on the face of the pleading, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.*

"A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id.* In considering whether jurisdiction has been proved as a matter of fact, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (citations omitted). "[N]o presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie*, 15 F.3d at 598 (internal citation omitted).

as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard.'" *Id.* (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)).

### C.   There Is a Strong Presumption in Favor of Arbitration

Guiding the *Stout* analysis, however, is the bedrock principle that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract." 9 U.S.C. §2. Thus, the FAA "expresses a strong public policy favoring arbitration in a broad range of disputes." *Cooper v. MRM, Inc.*, 367 F.3d 493, 498 (6th Cir. 2004). Indeed, "[i]t is well-established that any doubts regarding arbitrability should be resolved in favor of arbitration." *Glazer*, 394 F.3d at 451 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927 (1983)).

Arbitration is intended to provide parties with the relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets. *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 748 F.3d 708, 716-17 (6th Cir. 2014). To require a defendant to proceed further with litigation when the parties expressly agreed to arbitration would defeat the very purpose underlying the FAA. *Id.*

The FAA was enacted to overcome "widespread judicial hostility to arbitration." *Am. Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2308-09

(2013). Thus, courts are not only encouraged, but required, to "rigorously enforce" arbitration agreements. *Id.* at 2309, citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

Therefore, when parties to a lawsuit have entered a valid arbitration agreement, the court **must** compel arbitration and stay the proceedings while arbitration occurs. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing 9 U.S.C. § 2). There is no discretion in this regard. *See id.*

### D. Arbitration Agreements Must be Given the Broadest Possible Scope

The Circuit rule is clear that, when an agreement to arbitrate exists between parties, "… **any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'**" *Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568, 576-77 (6th Cir. 2003) (emphasis added) (quoting *AT&T Techs. v. Commc'ns Workers of Am., 4*75 U.S. 643, 650 (1986)).

In order for a claim to trigger arbitration, it need only be "arguably cover[ed]" by an arbitration clause. *Id.* at 578 (6th Cir. 2003) (internal quotation marks removed). Claims that "have their origin or genesis" in a contract containing an arbitration clause "arise out of" that contract "whether or not they implicate interpretation or performance of the contract per se." *Id.*

Thus, "[w]hen faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." *Solvay Pharm, Inc v. Duramed Pharm, Inc*, 442 F3d 471, 482 n.10 (6th Cir. 2006) "Indeed, in such a case, **only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators**." *Id.* (internal quotation marks and citation omitted).

### E.    State Law Cannot Limit Application of the FAA

The FAA preempts all conflicting state laws—states cannot create exceptions to the enforcement of FAA arbitration agreements. *See Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("The FAA's displacement of conflicting state law is now well-established, and has been repeatedly affirmed." (internal quotation marks and citation omitted)).

### F.    Choice of Law

State law, however, governs in determining whether an arbitration clause itself was validly obtained according to general contract law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Thus, with respect to the first *Stout* factor, the Court must

determine whether Plaintiffs' arbitration agreements were valid contracts under state law. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016)).

When jurisdiction arises on the basis of diversity, federal courts apply the choice of law rules of the state in which the court sits. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). In contract matters, Michigan relies on the approach described in the Restatement Conflict of Laws, 2d, for resolving conflict-of-law questions. *Chrysler Corp. v. Skyline Industrial Services, Inc.*, 448 Mich. 113, 528 N.W.2d 698, 703 (Mich. 1995)).

Where (as here) there is an express contractual choice of law provision, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied" unless "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state … ." *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 389 (6th Cir. 2017) (quoting Restatement (Second) of Conflict of Laws § 187 (1971) and citing *Chrysler Corp*, *supra*).

"No detailed statement can be made of the situations where a 'fundamental' policy of the state . . . will be found to exist." Restatement (Second) of Conflict of Laws § 187 cmt. g. "To be 'fundamental,' a policy must … be a substantial one." *Id*. A fundamental rule is not "likely to be represented . . . by general rules of contract law." *Id*.

III.   **FACTS AND ARGUMENT**

Because all of Plaintiffs' claims are subject to a valid and enforceable arbitration provision, the Court should compel Plaintiffs to arbitrate those claims and dismiss or stay this action under the unambiguous mandates of the FAA. All four prongs of the *Stout* test weigh in favor of compelling arbitration.

>   **A.    Plaintiffs Agreed to Arbitration of Disputes in at Least Thirty-Five Franchise Agreements with New Horizons, Each and Every One of Which Included a Valid and Enforceable Arbitration Agreement**

The first prong of the *Stout* test is satisfied because Plaintiffs here entered into valid and enforceable arbitration agreements.

Plaintiffs base their complaint on New Horizons' alleged breach of "Participation Agreements" entered into among the parties in connection with their joint creation of a new program to be used for delivery of online learning offerings under the New Horizons Virtual Delivery Program ("VDP"). (Complaint, and its exhibits, generally.)

Plaintiffs acknowledge that they each own numerous "franchise licenses" under which they operate New Horizons franchises in territories throughout the United States. (Complaint, ¶¶ 7-12, stating that NHLS and 5PNH control fifteen (15) and twenty-two (22) New Horizons franchises, respectively.) Plaintiffs, however, fail to mention that, in order to obtain each franchise license, NHLS or 5PNH (depending on the particular franchise) entered into a Franchise Agreement

(collectively, the "Franchise Agreements") with New Horizons. (Declaration of Gregory E. Marsella ("Marsella Decl."), ¶¶ 2-12.)

Each and every one of the Franchise Agreements entered into between NHLS or 5PNH and New Horizons included a valid and enforceable arbitration agreement.

For example, on July 1, 2016, 5PNH entered into a Franchise Agreement (the "5PNH Austin Franchise Agreement") in conjunction with its purchase of the right to operate a franchise in Austin, Texas. (Marsella Decl., ¶ 3, Exh. B.) That Franchise Agreement included the following term:

> Except as specifically modified by this Article XI, and excepting matters involving provisional remedies as set forth in Section 11.2 below, any dispute between (i) Franchisor and its Affiliates and (ii) Franchisee, Equity Holders or their respective Affiliates, arising out of or relating to this Agreement or its breach, including without limitation, any claim that this Agreement or any of its parts, is invalid, illegal or otherwise voidable or void, will be resolved by submission to binding arbitration before an arbitrator referred by the American Arbitration Association ("AAA"), in accordance with its Commercial Arbitration Rules. If all parties to the dispute agree, the dispute may be arbitrated by any other arbitration organization. All arbitrations must be conducted on an individual (and not class-wide or multiple plaintiff) basis. All hearings and other proceedings shall take place in Orange County, California, or, at Franchisor's sole discretion and if Franchisor so elects, in the county where the principal place of business of Franchisee is then located.

(*Id.*, § 11.2.)

The 5PNH Austin Franchise Agreement further provides that "Franchisor and Franchisee each acknowledge and warrant to each other that they wish to have all terms of their business relationship defined in this written Agreement." (*Id.*, § 16.3.)

10

It further provides that "Except as otherwise provided in Article XI hereof and this Section 14.1, this Agreement and the totality of the legal relations among the parties hereto shall be governed by and construed in accordance with the laws of the State of California." (*Id*., § 14.1.)

On June 1, 2018, NHLS entered into an Assignment and Assumption of Franchise Agreement (the "NHLS Philadelphia Assignment") in which it acquired the Philadelphia, Pennsylvania franchise owned by NH Philadelphia, LLC. (Marsella Decl., ¶ 6, Exh. C.) By that agreement, NHLS agreed "to assume and undertake all obligations of Assignor of whatever nature under the Franchise Agreement, including all exhibits thereto, and the Ancillary Agreements… ." (*Id*., § 2.) The referenced Franchise Agreement (the "NHLS Philadelphia Franchise Agreement")—dated August 1, 2014, and attached as Exhibit 1 of the NHLS Philadelphia Assignment—includes terms that are word-for-word identical with those quoted above from the 5PNH Austin Franchise Agreement. (*Id*., Exh. 1, § 11.1, § 16.3, and § 14.1.)

The Franchise Agreements, thus, contain a clear and unambiguous agreement to arbitrate disputes. Under general contract principles, a party is bound by the provisions of a contract they sign, unless they can show special circumstances that would relieve them of such an obligation. *See Stout*, 228 F.3d at 715. No such circumstances are present here. Indeed, Plaintiffs and their principals are the epitome

of sophisticated actors and, over a period spanning 25 years, they negotiated and signed no fewer than 35 agreements with New Horizons containing essentially or identically the same arbitration provisions. (Complaint ¶ 9-12, Marsella Decl., ¶¶ 2-12.)

> **B.** **This Dispute is Within the Scope of the Arbitration Clauses in the Franchise Agreements**

The second prong of the *Stout* test is satisfied because Plaintiffs' claims are within the scope of the Franchise Agreements' arbitration clauses.

Plaintiffs are expected to argue that this litigation falls outside the scope of the Franchise Agreements' arbitration agreements because they, Plaintiffs, are not suing for breach of any of the Franchise Agreements but, rather, for alleged breach of the Virtual Delivery Program Agreements. Such arguments are untenable.

Arbitration clauses that, like the ones here, cover disputes "arising out of" an agreement are "extremely broad" and must be treated as such. *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983).

That the Complaint does not allege breach of the Franchise Agreements does not mean that the litigation is not in the scope of their arbitration clauses. *Highlands Wellmont Health Network*, 350 F.3d at 578 (claims that "have their origin or genesis" in a contract containing an arbitration clause "arise out of" that contract "whether or not [the claims] implicate interpretation or performance of the contract *per se*").

It is clear that, while breach of the Franchise Agreements is not specifically alleged in the Complaint, this litigation does "aris[e] out of" those agreements and, therefore, is within the scope of their arbitration clauses.

In particular:

- The Complaint goes out of its way to stress the existence of the franchising relationship. (Complaint ¶¶ 9-12.)

- Throughout the Virtual Delivery Program Participation Agreements (the "VDPAs") on which Plaintiffs sue, the parties to those agreements are identified as "Franchisor" and "Franchisee." (Complaint, Exhs. A and B, Marsella Decl., ¶ 13, Exhs. D and E.)[3]

- The Complaint is clear that Plaintiffs' own virtual delivery programs (the "Global OLL" and its predecessor) were formed by, and provided offerings exclusively to, New Horizon's franchisees. (Complaint ¶¶ 13-18.) Thus, those programs—like the program created by the VDPAs— would not have existed without the preexisting franchising relationships.

---

[3] While Plaintiffs' Complaint cites to the VDPAs as Exhibits A and B, Plaintiffs did not, in fact, attach *any* of their purported exhibits to the complaint, nor, nearly two months later, have they made any motion to file those purported exhibits under seal. Defendants, therefore, have provided copies of these confidential VDPAs (redacted so as to shield confidential business details not relevant to determination of this Motion) as exhibits hereto.

- The first recital of each of the VDPAs acknowledges that the VDPA is an extension of the franchise agreements:

  > WHEREAS, Franchisor and Franchisee are parties to multiple New Horizons Franchise Agreements for various territories throughout the United States (collectively the "Franchise Agreement [*sic*]), as amended by that certain Integrated Learning Agreement (the "ILA")

  (Marsella Decl., ¶ 13, Exhs. D and E, preamble.)

- The VDPAs explicitly rely on and incorporate the Franchise Agreements, stating that "[c]apitalized terms used but not otherwise defined shall have the meaning ascribed to them in the Franchise Agreement … ." (*Id.*)

- The VDPAs are reliant upon, and in effect only as long as, the Franchise Agreements. (*Id.* § 1 ("Commencing as of the Effective Date and ending on the last day of each applicable Franchise Agreement, Franchisee and each of its subsidiaries shall participate in the New Horizons Virtual Delivery Program …").)

- Breaches of certain terms of the VDPAs are specifically designated as grounds for termination of the Franchise Agreement. (*E.g.,* Marsella Decl., ¶ 13, Exhs. D § 13 and E § 12 ("Any breach of this section may be cause for termination of each Franchise Agreement").

There can be no question, therefore, that the VDPAs are extensions of the contractual franchisor/franchisee relationship created by the Franchise Agreements among the parties, and that Plaintiffs' claims are ones "arising out of" and "relating to" the Franchise Agreements. Thus, all of Plaintiffs' claims fall within the broad scope of the valid and enforceable arbitration agreements entered into among the parties. This prong of the *Stout* test is clearly satisfied and Plaintiffs, therefore, should be required to pursue their claims in arbitration.

### C.    No Federal Statutory Claims are at Issue Here

The third prong of the *Stout* test addresses whether a plaintiff's federal statutory claims, if any, may be submitted to arbitration. *Stout*, 228 F.3d at 714. The party *opposing* arbitration has the burden to demonstrate that Congress intended to preclude the voluntary waiver of a judicial hearing of its claims. *Shearson/American Express v. McMahon*, 482 U.S. 220, 227 (1987).

Plaintiffs will be unable to meet this burden because none of their claims arise under any federal statute. This prong of the *Stout* test favors New Horizons, and the Court, therefore, should compel arbitration of all claims.

### D.    The Court Should Dismiss the Action Because All of the Claims Here Are Arbitrable

The final inquiry under the *Stout* test is whether to dismiss or stay the action. *Stout*, 228 F.3d at 714. If all claims are subject to arbitration, there is no reason to stay the action, and instead, the action should be dismissed. "The weight of authority clearly

supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000).

As set forth above, all of Plaintiffs' claims are arbitrable and must be arbitrated. Therefore the Court should dismiss the action.

## IV.   CONCLUSION

For all these reasons, the Court should order Plaintiffs to submit their claims to binding arbitration in Orange County, California, as required by the arbitration agreements they entered into, and dismiss this action.

Dated: June 3, 2020

/s/ Joshua S. Hodas
Joshua S. Hodas, Ph.D.
*Admitted* (Cal. Bar No. 250802)
josh.hodas@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 W. 5th Street, Suite 4000
Los Angeles, California 90071
Tel: 213.250.1800
Fax: 213.250.7900
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 3rd day of June 2020, served a true and correct copy of the foregoing via ECF, upon all parties receiving this notice through the ECF system.

/s/ Joshua S. Hodas
Joshua S. Hodas