## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**NH LEARNING SOLUTIONS**
**CORPORATION,** a Michigan corporation, and
**5P NH HOLDING COMPANY, LLC,** a
Texas limited liability company,

      Plaintiffs,

                                      Case No.: 2:20-cv-10904
                                      Justice Hon. Linda V. Parker

v.

**NEW HORIZONS FRANCHISING GROUP, INC.**
a Delaware corporation,

      Defendant.

_____

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
## MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY
_____

## STATEMENT OF ISSUES PRESENTED

I.   Should the Court apply the arbitration provision in the franchise agreements between the parties to a dispute over breach of separate contracts between them that do not provide for arbitration, where the dispute at issue can be resolved without any reference to the franchise agreements.

     Plaintiffs' Position:      No

     Defendant's Position:    Yes

II.  If the Court were to grant Defendant's Motion, should the court first order mediation in lieu of arbitration, where the franchise agreements require the parties to mediate disputes prior to arbitration.

     Plaintiffs' Position:      Yes

     Defendant's Position:    No

# CONTROLLING AUTHORITY

*NCR Corp. v. Korala Assocs., Ltd.,* 512 F.3d 807, 814 (6th Cir. 2008)

*Nestle Waters N. Am., Inc. v. Bollman,* 505 F.3d 498, 505 (6th Cir.2007)

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003)

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY**

## I.      INTRODUCTION

Plaintiffs, NH Learning Solutions Corporation (NHLS") and 5PNH Holding Company LLC ("5PNH"), are computer training companies that provide instructor-led on-line training in the use of business applications, business skills, information technology ("IT"), leadership and management and business process optimization through franchise locations under the tradename New Horizons Computer Learning Centers.   The NHLS and 5PNH both have multiple franchise agreements with Defendant, New Horizons Franchising Group, Inc. ("New Horizons") covering multiple territories thorough out the U.S.

New Horizons ("New Horizons") seeks to compel arbitration of Plaintiffs' claims for breach of the Participation Agreements ("PAs") and First Amendment to Participation Agreements ("Amendments").  These agreements are the contracts that controlled Plaintiffs' participation in New Horizon's Virtual Delivery Program ("VDP") created long after the parties franchise agreements.  The VDP is the platform New Horizons wanted all its franchisees in late 2018 or early 2019 to use for the delivery of virtual instructor facilitated training over the internet.  Neither the

PAs, nor the Amendments contain any provision for arbitration.[1]  *See*, Complaint Exhibit A, NHLS June 1, 2019 Participation Agreement; Complaint Exhibit B, 5PNH June 1, 2019 Participation Agreement; Complaint Exhibit C, NHLS August 1, 2019 First Amendment to Participation Agreement; and Complaint Exhibit D, 5PNH August 1, 2019 First Amendment to Participation Agreement.[2]

The crux of New Horizons' argument is that New Horizons, NHLS and 5PNH share a lengthy history as franchisor and franchisees with franchise agreements between them that include language stating that any dispute between the Franchisor and Franchisee "arising out of or relating to this [Franchise] Agreement or its breach…will be resolved by submission to binding arbitration…"  Thus, says New Horizons, this dispute over breach of the VDP PAs must be submitted for arbitration.

However, these facts do not mandate arbitration of Plaintiffs' claims.  The proper inquiry is whether the claims brought in this case can be resolved without reference to the agreement containing the arbitration provision.  "If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is

---

[1] New Horizons disingenuously states, "[these] agreements directly reference, incorporate, and rely on the franchise agreements…"  Defendant's Memorandum of Point and Authorities, pp. 1-2.  This is untrue.  Paragraph 3 of the PAs only incorporate a previously executed Integrated Learning Agreement ("ILA"), which is an exhibit to the franchise agreements.  <u>The ILA does not include an arbitration provision</u>.

[2] These Exhibits A though D to the Complaint were filed under seal on June 15, 2020.  Accordingly, they are not provided as attachments to Plaintiffs' Response. Plaintiffs Exhibits included with this response will be referred to numerically.

inappropriate…" *NCR Corp. v. Korala Associates, Ltd.*, 512 F. 3d 807, 814 (6th Cir. 2006).

## II.   ARGUMENT

### A. Legal Standard

The Federal Arbitration Act, 9 U.S.C. § 1 et. seq. ("FAA"), provides in relevant part, that a district court must enter an order to arbitrate only upon being satisfied that the making of the agreement for arbitration is not an issue.  9 U.S.C. § 4.  *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 23 (1983).  Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Javitch v. First Union Securities, Inc.,* 315 F.3d 619, 624 (6th Cir.2003).

This does not mean, however, that a federal court faced with an arbitration provision must find that it always governs the resolution of a dispute between parties or applies to the claims that they present.  It is axiomatic that arbitration is a matter of consent and that parties cannot be compelled to arbitrate any matters that they have not agreed to arbitrate. *See, e.g., Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).  The language of the contract defines the scope of disputes subject to arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ("the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties").

As the Sixth Circuit has recognized, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch, supra,* at 624 (citations omitted). *See also Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 450 (6th Cir. 2005).

In the Sixth Circuit, ***the test for determining whether a dispute falls within the scope of a broad arbitration clause is if "an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement-along with the presumption in favor of arbitrability and the intent of the parties."*** *NCR Corp. v. Korala Assocs., Ltd.,* 512 F.3d 807, 814 (6th Cir. 2008) (quoting *Nestle Waters N. Am., Inc. v. Bollman,* 505 F.3d 498, 505 (6th Cir.2007)) (Emphasis supplied). *See also, Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003) ("A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue.").

In this case, the scope of language regarding arbitrability contained in the franchise agreement states, in relevant part, that "any dispute between (i) Franchisor and… (ii) Franchisee…arising out of or relating to this [Franchise] Agreement or its breach…will be resolved by submission to binding arbitration…." *See,* §11.2 of the

4

5PNH Austin, Texas Franchise Agreement and §11.1 of the NHLS Philadelphia, Pennsylvania Franchise Agreement appended to Assignment Agreement, Exhibits B and C, respectively, to New Horizons' Memorandum of Points and Authorities.

Thus, applying the standard set forth in the *NCR Corp.*, *Nestle Waters* and *Fazio* cases, *supra*, the salient question here is whether the Plaintiffs' claims for breach of the VDP Participation Agreements and Amendments can be maintained without reference to the franchise agreements. If it can, the court must deny Defendant's motion.

### B. The Franchise Agreements

The franchise agreements entered into by NHLS and 5PNH permit franchisees, *inter alia*, to act as franchisees of New Horizons in connection with the sale and delivery of training to companies and individuals in the use of software related to business applications, business skills, information technology ("IT"), leadership and management and business process optimization. The franchise agreements, also, cover a myriad of topics related to franchisors intellectual property, systems, confidentiality and the like. ***The franchise agreements do not cover the required method and platform that the franchisees would use to deliver and purchase customer training, or the breakdown of compensation related to the use of the platform.*** *See, generally*, franchise agreements, Exhibits B and C to New Horizons' Memorandum of Points and Authorities. In fact, it follows, *a fortiori*, that

5

the very reason that New Horizons approached NHLS and 5PHG in the Spring of 2019 with proposed Participation Agreements in its newly created VDP was due to the lack of any provision in the franchise agreements that required it.

### C. The Virtual Delivery Program, Participation Agreements and Amendments.

The VDP is the platform created by New Horizons in late 2018 or early 2019 for franchisees to use for the sale and delivery of virtual instructor facilitated training over the internet.  New Horizons wanted VDP to be the "exclusive platform" used by its participant franchisees to deliver virtual instructor training.  *See*, NHLS and 5PNH June 1, 2019 Participation Agreements, ¶1, Complaint, Exhibits A and B. Prior to the VDP, NHLS and 5PNH delivered their on-line training through a company they created, known as Global OLL, LLC ("Global OLL") and various other entities dating back as far as 2009.  *See*, Complaint ¶¶13-18.  After creating VDP, New Horizons approached NHLS and 5PNH with a plan to have Global OLL's members dissolve the company and join VDP.  Complaint, ¶19.  To entice them to give up Global OLL, New Horizons offered the Plaintiffs participation agreements in the VDP.  Eventually, Plaintiffs singed the PAs, which were effective June 1, 2019.

Under the basic terms of the PAs, NHLS and 5PNH would purchase class seats from NHFG at the prices set forth in the VDP Rules, the pricing of which were based on the category of class purchased, i.e., Apps A, Apps B, Tech A, Tech B,

Tech C, etc.  *See*, second and third page of VDP Rules entitled "New Horizons Virtual Delivery Program", Complaint, Exhibits A and B.  The PAs also provided minimum commitments ("Minimum Instructor Delivery") on the part of New Horizons to utilize NHLS and 5PNH instructors in the VDP.  *See*, PAs, ¶5(a), Complaint, Exhibits A and B.  For the use of their instructors, New Horizons committed to pay NHLS and 5PNH the prices set forth in the VDP Rules.  *See*, third and fourth page of VDP Rules entitled "New Horizons Virtual Delivery Program", Complaint, Exhibits A and B.

This system of Minimum Instructor Delivery commitment was supposed to ensure the monthly payments to both NHLS and 5PNH for each party's respective Minimum Instructor Delivery would exceed the average cost of seat consumption each company formerly averaged under the Global OLL platform, resulting in a profit as incentive to join the VDP.  As alleged by Plaintiffs in the Complaint, this did not happen.

In an effort to fix the problems, NHLS and 5PNH separately agreed to New Horizons' Amendments to the PAs (which are nearly identical) both with an effective date of August 1, 2019.  *See*, NHLS and 5PNH First Amendment to Participation Agreements, Complaint, Exhibits C and D, respectively.  The Amendments changed the terms of the PAs to a system whereby New Horizons' Minimum Instructor Delivery commitment to utilize NHLS and 5PNH instructors

would be 2% over their monthly seat consumption for each category of classes offered under the VDP.  *See*, Amendments, ¶4, Complaint, Exhibits C and D.  This was intended to guarantee that both NHLS and 5PNH would realize substantial profits.

### D. Analysis

In this action, Plaintiffs' claims are simply that New Horizons failed to meet the Minimum Instructor Delivery commitment spelled out in the PAs and the Amendments, causing them damages.[3]  *See*, Complaint, ¶¶ 58-60 and 69-71.  None of the VDP framework or the terms and conditions for the VDP regarding instructor utilization commitments, training seat purchases or the pricing thereof is covered anywhere in the franchise agreements.  What is more, the only way to measure Plaintiffs' damages caused by the failure of New Horizons to meet the Minimum Instructor Delivery commitments is by application of the terms and conditions contained in the PAs and Amendments—not any provision in the franchise agreements.

Further, the Amendments contain an Integration Clause, stating, ***"[t]his Amendment and the Participation Agreement dated June 1, 2019 constitute the entire agreement between the parties hereto concerning the subject matter set***

---

[3] Plaintiffs also have claims alleging they were fraudulently induced to enter into the PAs.  Obviously, resolution of these claims does not require any reference to the franchise agreements.

***forth herein and supersedes and cancels all proposals and other written or oral agreements between the parties regarding the Amendment."*** [4] (Emphasis supplied). PAs, ¶9, Complaint, Exhibits C and D.  This language evidences an intent of the parties to move the PAs and Amendments outside the purview of any other agreements between them, including the franchise agreements and their arbitration provisions.

Again, the test to determine if a dispute falls within the purview of an arbitration provision is whether the action can be maintained without reference to the contract that includes the arbitration clause.  If it can, the action is outside the scope of the arbitration agreement.  *NCR Corp.*, *Nestle Waters* and *Fazio*, *supra.*

Clearly, the entirety of Plaintiffs' claims for money damage resulting from New Horizons' breach of the Virtual Delivery Program Participation Agreements and their Amendments can be resolved without any reference to the franchise agreements.  Further, the inclusion of the Integration Clause at paragraph 9 of the Amendments demonstrates the parties' intent to eliminate the franchise agreements, including their arbitration provisions, from having any application to the Participation Agreements and Amendments.

---

[4] The Court should take note that New Horizons makes no mention of the Amendments in its motion and supporting memorandum.  Perhaps this language, unfavorable to its position, is the reason for this omission.

## III.   CONCLUSION

New Horizons' Motion is long on histrionics and hand waiving over the long history of the parties as franchisor/franchisees, and presumptions in favor of arbitration.   However, it is short on analysis of the factual claims at issue in this lawsuit, and does not even reference the proper legal test applicable to the determination of the issue.   Again, parties cannot be compelled to arbitrate any matters that they have not agreed to arbitrate.   *See, Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).   Applying the relevant facts and legal principals, the parties did not agree to arbitrate any matters related to the PAs and Amendments.   Accordingly, New Horizons' Motion must be denied.[5]

---

[5] If the Court were to decide otherwise (which it should not), arbitration is not the appropriate remedy.   Instead, the Court should order the parties to first mediate their claims as required under ¶11.2 of the 5PNH franchise agreements and ¶11.1(c)(ii) of the NHLS franchise agreements.   *See*, Exhibits B and C, respectively, to New Horizons' Memorandum of Points and Authorities.   Note: Mediation of NHLS' claims is proper because New Horizons, apparently believing the Court's order to arbitrate being a *fait accompli*, filed its Demand for Arbitration with the American Arbitration Association only two days after filing this Motion.   *See*, June 5, 2020 Demand for Arbitration, Exhibit 1.   Paragraph 11.1(c) of the NHLS franchise agreements permits either party to demand mediation prior to arbitration after a demand for arbitration has been made.

Respectfully submitted,

By:   /s/Gregory S. Pierce
Gregory S. Pierce (P45552)
Attorney for Plaintiffs
14115 Farmington Road
Livonia, MI 48154
(734) 853-2043
gregory.pierce@nhls.com

Dated: June 16, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2020 I electronically filed the foregoing paper

with the Clerk of the Court using the ECF system, which will send notification of

such filing to all counsel of record.

Respectfully submitted,

By:   /s/Gregory S. Pierce
Gregory S. Pierce (P45552)
Attorney for Plaintiffs
14115 Farmington Road
Livonia, MI 48154
(734) 853-2043
gregory.pierce@nhls.com

Dated: June 16, 2020