UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**NH LEARNING SOLUTIONS CORPORATION**,
a Michigan corporation, and
**5PNH HOLDING COMPANY, LLC**,
a Texas limited liability company,,

                Plaintiffs,

v.

**NEW HORIZONS FRANCHISING GROUP, INC.**,
a Delaware corporation,

                Defendant.

Case No.: 2:20-cv-10904
Justice Hon. Linda V. Parker

# REPLY IN SUPPORT OF

# MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY

4836-8488-1088.7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

There is no dispute that, over the last 25 years, Plaintiffs have entered into no fewer than thirty-five franchise agreements with New Horizons, and that each and every one of those agreements contained a valid, enforceable arbitration agreement.

Plaintiffs, however, press the remarkable view that the dispute over the parties' activities in connection with the New Horizons Virtual Delivery Program ("VDP") (a program that is entirely intertwined with the New Horizons franchising system, exists only to serve its franchisees, can be used only by its franchisees, and can only be staffed by its franchisees) somehow fails to relate *in any way whatsoever* to those franchise agreements which Plaintiffs entered into in part in exchange for the right to even be eligible to participate in such delivery programs.

Plaintiffs agree that the law **strongly** favors enforcing arbitration agreements unless there is clear evidence that the parties did not intend to arbitrate the sort of dispute at issue, but argue that this Motion should be evaluated under a special standard. Plaintiffs, however, have not analyzed the very cases they rely on for the standard they advance. Doing so shows that even under that standard, Plaintiffs should be ordered to arbitrate their claims.[1]

---

[1] Plaintiffs' did not address, at all, the Circuit's four-factor test—from *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)—for compelling arbitration, or New Horizon's analysis of the application of that test here. Rather, Plaintiffs focused

## II.    LEGAL STANDARD

As set forth at length in New Horizons' opening brief, the standard for compelling

arbitration in accordance with the Federal Arbitration Act is **very** liberal and favors

compelling arbitration in nearly every circumstance where a valid arbitration

provision is found in a contract with the slightest connection to the dispute.

"When faced with a broad arbitration clause, such as one covering any dispute

arising out of an agreement, a court should follow the presumption of arbitration and

resolve doubts in favor of arbitration." *Solvay Pharm, Inc v. Duramed Pharm, Inc*,

442 F3d 471, 482 n.10 (6th Cir. 2006) "Indeed, in such a case, only an express

provision excluding a specific dispute, or the most forceful evidence of a purpose to

exclude the claim from arbitration, will remove the dispute from consideration by

the arbitrators." *Id.* (internal quotation marks and citation omitted).

Thus, presented with a valid arbitration agreement that even arguably covers

the dispute, the court **must** compel arbitration. There is no discretion in this regard.

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing 9 U.S.C. § 2).

**The party opposing arbitration has the burden (equivalent to that at**

**summary judgment) to show that the motion should not be granted**. *Mounts v.*

*Midland Funding L.L.C.*, 257 F. Supp. 3d 930 (E.D. Tenn. 2017).

---

exclusively on the second factor of that test—the scope of the arbitration agreement. Plaintiffs having thus conceded that New Horizons' overall analysis was correct, New Horizons will similarly focus this Reply exclusively on the scope factor.

## III.   ARGUMENT

Plaintiffs concede that the arbitration clauses here require arbitration of disputes "arising out of or relating to" the franchise agreements, and that, under the standard above, the clauses would be entitled to very broad application. (Opposition at 3, 4-5.)

Plaintiffs argue, however, that another standard applies, providing that, "if an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement … ." (Opp. at 4, citing *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008); *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007).)

As set forth below, Plaintiffs' reliance on this standard is erroneous, because it is not a new or different standard, but, rather, just another way of stating the same thing. In fact, the very cases Plaintiffs rely upon for their argument support compelling arbitration here (as they did in *NCR* and *Nestle*).

### A.   *NCR Corp. v. Korala Assocs., Ltd.*

In *NCR*, the case Plaintiffs cited most directly for this standard, plaintiff NCR contracted defendant Korala to develop software modules related to the APTRA XFS software system used in certain models of NCR's bank ATMs. The contract for that development included an arbitration clause encompassing "any controversy or claim arising out of or relating to this contract". *NCR*, 512 F.3d at 812-13. The lawsuit concerned NCR's claims that, in part during the period of that contract, Korala

obtained both APTRA XFS-based ATMs and ATMs running a second system, S4i, from NCR customers and illegally copied from them (as well as from an APTRA AFS ATM NCR had loaned Korala) parts of both of those two operating systems.

NCR sued for two counts of copyright infringement (one for each software system), two counts of contributory infringement (for contributing to NCR's customers' breach of their license agreements for the two systems), two similar counts of tortious interference with contract, two counts of illegal importation, and a count of unfair competition. *Id*. at 812.

First, it should be noted that—even though **none** of the lawsuit's claims implicated breach of the development agreement—the court found that the copyright-infringement and illegal-importation claims as to APTRA XFS—the system that Korala had been hired to augment—*were* subject to the arbitration clause because the court would likely have to examine the contract to determine whether any relevant license rights had been granted to Korala. *Id*. at 814-15, 818.

In contrast, because the S4i system was not mentioned in the contract and was not part of the project Korala was contracted to undertake, the court determined that the claims related to that system could be adjudicated without reference to the contract and, therefore, were not subject to the arbitration clause.

This is entirely unremarkable. These were pure torts that could as easily have been committed by anyone without any special relationship to NCR. That they could

be adjudicated without reference to the contract is just an indication that they did not "arise from or relate to" the contract—the explicit scope of the arbitration clause.

        **B.**     ***Nestle Waters N. Am., Inc. v. Bollman***

Unlike *NCR*, which looked at the application of an arbitration clause to tort claims, the Nestle case, also cited by Plaintiffs, related to breach of contract claims, and, like here, addressed the application of an arbitration clause in one contract to claims for breach of another contract. The Sixth Circuit had already addressed circumstances where the arbitration clause was present in a contract signed *after* the one whose breach was at issue (and found that the later-signed arbitration clause did not govern). *See Nestle*, 505 F.3d at 504. *Nestle*, however, was the first case in which the Sixth Circuit was faced with the situation here: the question of whether an arbitration clause would apply to a dispute over breach of a *later-signed* contract. *Id*. Relying on the standard advocated by Plaintiffs, the *Nestle* court determined that the earlier arbitration clause *did* govern the claim for breach of the later-signed contract. New Horizons has not identified any case that found differently in that circumstance.

       In *Nestle,* the arbitration clause (which applied to "any controversy or claim … arising out of this Agreement") was contained in a Purchase and Sale Agreement ("PSA") for the sale of various water rights, while the suit was for breach of a Deed, the form of which (along with several other documents) had been attached to the PSA and only executed at some time after the PSA. *Id*. at 501.

Although the plaintiffs sued only on the Deed—which was structured as a self-contained agreement and did not contain an arbitration agreement—the district court ordered arbitration and the appeals court (in spite of the length of the opinion) had little difficulty in affirming. As the appeals court stated:

> [W]e are convinced that the proper interpretation of the Deed could not be determined without reference to the PSA and the ongoing relationship between Nestle and the Bollmans. … In the course of interpreting the terms of the Deed, it is almost certain that reference will be made to the other documents, as well as the PSA, since it was the PSA that created the relationship between Nestle and the Bollmans in the first place.
>
> …
>
> While the sequence of contracts may not be dispositive, the fact that the arbitration clause is part of the umbrella agreement governing the parties' overall relationship is sufficient to distinguish our facts from those cases in which opportunistic parties sought to apply arbitration clauses from later agreements to conduct arising out of earlier agreements

*Id*. at 506.

This is exactly the circumstances here: the Franchise Agreements are umbrella agreements governing the entire relationship between the parties. The VDPAs were executed later as part of, and only because of, the relationships established by the Franchise Agreements. New Horizons has set forth at length the numerous ways in which the VDPAs are intertwined with the Franchise Agreements. (Opening Brief at 13-14.) Importantly, the VDPAs explicitly refer to and incorporate definitions contained in the Franchise Agreements, and (as

Plaintiffs acknowledge) explicitly incorporate and rely on the Integrated Learning Agreements ("ILAs") that are exhibits to the Franchise Agreements. (Opposition at 2, n. 1.) Contrary to Plaintiffs' assertions, the ILAs are part of the Franchise Agreements and directly reference and rely on their terms. The Franchise Agreements are similarly explicitly tied to and explain the functioning of the ILAs. As such, the ILAs stand in exactly the same relationship to the Franchise Agreements as the Deed did to the PSA in *Nestle*. The ILAs are, thus, unquestionably subject to the arbitration clauses, and, by their incorporation, the VDPAs are too.

## IV. CONCLUSION

The standard argued-for by Plaintiffs does not change the outcome. For that reason, and those set forth in the opening brief, the Court should order Plaintiffs to submit their claims to binding arbitration in Orange County, California,

Dated: June 22, 2020

/s/ Joshua S. Hodas
Joshua S. Hodas, Ph.D.
*Admitted* (Cal. Bar No. 250802)
josh.hodas@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 W. 5th Street, Suite 4000
Los Angeles, California 90071
Tel: 213.250.1800
Fax: 213.250.7900
*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that I have this 22nd day of June 2020, served a true and correct copy of the foregoing via ECF, upon all parties receiving this notice through the ECF system.

/s/ Joshua S. Hodas
Joshua S. Hodas

4836-8488-1088.7

8