UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NH LEARNING SOLUTIONS CORP.
and 5P NH HOLDING CO., LLC,

      Plaintiffs,

v.
                                     Civil Case No. 20-10904
                                     Honorable Linda V. Parker

NEW HORIZONS FRANCHISING
GROUP, INC.,

      Defendant.

_____

## OPINION & ORDER DENYING MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY (ECF NO. 8)

Over the past 25 years, Franchisee-Plaintiffs NH Learning Solutions Corp.

("NHLS") and 5P NH Holding Co., LLC ("5PNH") each executed many franchise

agreements with Franchisor-Defendant New Horizons Franchising Group, Inc., as

well as a 2019 "Participation Agreement" related to an online learning platform.

The former agreements contained arbitration provisions, while the latter

agreements did not.   Plaintiffs eventually filed the instant action against

Defendant, alleging breach of contract and fraudulent misrepresentation as it

relates to the 2019 Participation Agreements.   (Compl., ECF No. 1 at Pg. ID 12-

15.)

The matter is presently before the Court on Defendant's Motion to Compel

Arbitration and Dismiss or Stay, in which Defendant contends that the dispute at

bar falls within the scope of the arbitration clauses of the franchise agreements. (ECF No. 8.)   The motion has been fully briefed (ECF Nos. 12, 13.)   For the reasons that follow, the Court denies the motion.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs provide instructor-led live training in the use of business applications (among other things) under the tradename New Horizons Computer Learning Centers ("New Horizons").   (ECF No. 1 at Pg. ID 2, ¶ 7.)   Defendant is the franchisor of New Horizons licenses.   (*Id*. at Pg. ID 3, ¶ 8.)   Plaintiff NHLS owns 15 New Horizons franchise licenses ("Franchise Agreements" or "FAs") and Plaintiff 5PNH owns 22 of the same.   (*Id.* at Pg. ID 3, ¶¶ 9-10.)   Each of the FAs includes the following provisions or substantially similar ones:

- "[A]ny dispute between [] Franchisor . . . and Franchisee . . . arising out of or relating to this Agreement or its breach . . . will be resolved by submission to binding arbitration . . . ."   (Ex. B, ECF No. 8-3 at Pg. ID 126, ¶ 11.2; Ex. C, ECF No. 8-4 at Pg. ID 232, ¶ 11.1.)

- "Franchisor and Franchisee each acknowledge and warrant to each other that they wish to have all terms of their business relationship defined in this written Agreement. . . . This Agreement, together with any other documents or agreements executed by the parties contemporaneously herewith, constitutes the entire agreement between the parties and contains all terms, conditions, rights and obligations of the parties with respect to any aspect of the relationship between the parties. . . . No change, modification amendment or waiver of any of the provisions hereof shall be effective

and binding upon either party unless it is in writing, specifically identified as an amendment hereto . . . . (Ex. C, ECF No. 8-4 at Pg. ID 241, ¶ 16.3; Ex. B, ECF No. 8-3 at Pg. ID 135, ¶ 16.3.)

From 2008 to 2015, Plaintiffs provided the live training through various online platforms.   (ECF No. 1 at Pg. ID 3, ¶ 15.)   In 2015, Plaintiffs, along with two other New Horizons franchise owners, formed Global OLL, LLC in order to create an online platform to deliver the training using each member's instructors. (*Id.* at Pg. ID 3-4, ¶ 16.)   After its formation, Global OLL permitted all of Defendant's franchisees to purchase student seats from its schedule of live training classes.   (*Id.* at Pg. ID 4, ¶ 17.)   Defendant also purchased seats from Global OLL.   (*Id.* at Pg. ID 4, ¶ 18.)

In early 2019, Defendant contacted Plaintiffs to express its plan to have Global OLL's members dissolve the company and join Defendant's newly formed online instructor-led delivery platform (New Horizons Virtual Delivery Program ("New Platform")).   (*Id.* at Pg. ID 4, ¶ 19.)   To that end, on June 1, 2019, the NHLS Participation Agreement and 5PNH Participation Agreement ("PAs") were executed.   (*Id.* at Pg. ID 5, ¶¶ 24-25 (citing Ex. A, ECF No. 11-1; Ex. C, ECF No. 11-3).)[1]

---

1  Plaintiffs' exhibit list, as well as the cover page of each exhibit, does not correspond with the substance of each exhibit.   Accordingly, the Court cites to the PAs and Amendments as follows:   Exhibit A (ECF No. 11-1), NHLA

3

Per the PAs:

- Plaintiffs were required to abandon the Global OLL delivery platform, use the New Platform as "the exclusive platform used by Franchisee" and "publish and promote Franchisor's [New Platform] schedule and . . . not offer a competing schedule . . . ." (ECF No. 1 at Pg. ID 5, ¶ 26 (citing Ex. A, ECF No. 11-1 at Pg. ID 320, ¶ 1; Ex. C, ECF No. 11-3 at Pg. ID 334, ¶ 1).)

- Plaintiffs would purchase class seats from Defendant at the prices set forth in the New Platform Rules, which were attached to the PAs.  (*Id.* at Pg. ID 6, ¶ 29 (citing Ex. A, ECF No. 11-1 at Pg. ID 324-27; Ex. C, ECF No. 11-3 at Pg. ID 338-41).)

- Defendant would utilize, and Plaintiffs would provide, a minimum number of Plaintiffs' instructors per day. For the use of Plaintiffs' instructors, Defendant would pay Plaintiffs the prices set forth in the New Platform Rules.[2]  (*Id.* at Pg. ID 7, ¶ 33 (citing Ex. A, ECF No. 11-1 at Pg. ID 324-27; Ex. C, ECF No. 11-3 at Pg. ID 338-41).)

The parties agree that the PAs did not contain an arbitration provision.  (*See* ECF

---

Participation Agreement; Exhibit B (ECF No. 11-2), NHLA Amendment; Exhibit C (ECF No. 11-3), 5PNH Participation Agreement; and Exhibit D (ECF No. 11-4), 5PNH Amendment.

2  According to Plaintiffs, "[t]his system of minimum class delivery would ensure the monthly payments to both NHLS and 5PNH for each party's respective minimum instructor delivery would exceed the average cost of seat consumption each company formerly averaged under the Global OLL platform, resulting in a profit to each company as incentive to join the [New Platform]."  (ECF No. 1 at Pg. ID 7, ¶ 34.)

No. 8 at Pg. ID 57; ECF No. 12 at Pg. ID 350-51.)

Plaintiffs allege that, "[b]efore execution of the NHLS' and 5PNH's respective PAs, [Defendant] represented to [Plaintiffs] that the terms of all other [New Platform] participants' PAs . . . would have no effect [*sic*] on [Defendant's] ability to fulfill the commitments of the NHLS and 5PNH PAs."  (ECF No. 1 at Pg. ID 7, ¶ 35.)   However, in April 2019 (prior to the execution of the NHLS and 5PNH PAs), Defendant had executed a participation agreement with Integrated Learning Solutions, LLC, another New Horizons franchisee ("ILS" and "Pre-Existing PA").  (*Id.* at Pg. ID 7, ¶ 37.)   The Pre-Existing PA gave ILS the right to select the classes its instructors would teach on the New Platform schedule before all other participants, also known as the right of first refusal.  (*Id.* at Pg. ID 7, ¶ 38.)   Plaintiffs allege that Defendant did not disclose its arrangement with ILS prior to the execution of the NHLS and 5PNH PAs.  (*Id.* at Pg. ID 8, ¶ 40.) Plaintiffs further allege that Defendant knew or should have known that the right of first refusal in the Pre-Existing PA made it impossible for Plaintiffs to achieve the contractually obligated instructor utilization minimums and, in turn, the expected profits under their respective PAs.  (*Id.* at Pg. ID 8, ¶ 39.)

After the parties began operating under the PAs in early June 2019, this issue became apparent.  (*Id.* at Pg. ID 8, ¶ 43.)   Plaintiffs objected and insisted on an amendment to the PAs.  (*Id.* at Pg. ID 8, ¶ 44.)   Accordingly, on August 1,

Plaintiffs executed separate, but near identical amendments to the PAs

("Amendments").   (*Id.* at Pg. ID 8-9, ¶ 45 (citing Ex. B, ECF No. 11-2; Ex. D,

ECF No. 11-4).)   "The Amendments changed the terms of the PAs to a system

where [Defendant's] minimum monthly utilization of NHLS and 5PNH instructors

would be 2% over their monthly seat consumption for each category of classes

offered under the New Platform, thereby guaranteeing that both would realize

substantial profits."   (*Id.* at Pg. ID 9, ¶ 46.)   The Amendments also included an

"Integration Clause," which states in relevant part:

> [T]his Amendment constitutes the entire agreement
> between Franchisor and Franchisee concerning the subject
> matter herein and supersedes and cancels all proposals and
> other written or oral agreements between the parties
> related to the subject matter set forth herein.   Franchisee
> acknowledges that it is not entering into this Amendment
> on the basis of any representations not expressly contained
> in this Amendment.   Any modification to this
> Amendment must be in writing and signed by authorized
> representatives of Franchisor and Franchisee.

(Ex. B, ECF No. 11-2 at Pg. ID 330, ¶ 9; Ex. D, ECF No. 11-4 at Pg. ID 344, ¶ 9.)

Plaintiffs allege that during most months that followed the execution of the

Amendments, Defendant failed to meet the "Minimum Instructor Commitment."

(ECF No. 1 at Pg. ID 10, ¶ 48.)   In the months where Defendant did meet the

"Minimum Instructor Commitment," "it did so only by manipulating the number of

classes on the New Platform schedule by reducing the average number of students

6

per class below 12; thereby, increasing the number of classes offered on the [New Platform] schedule" and reducing the average revenue per class.   (*Id.* at Pg. ID 10, ¶¶ 49-50.)   Plaintiffs allege that these actions reduced or eliminated the expected profits to Plaintiffs and violated the terms and conditions of the PAs and Amendments.   (*Id.* at Pg. ID 11, ¶¶ 50-53.)

After the parties were unable to resolve the issue, Plaintiffs withdrew their participation in the New Platform as of April 13, 2020.   (*Id.* at Pg. ID 11, ¶¶ 54-56.)   On April 9, 2020, Plaintiffs filed the instant action, alleging breach of contract and fraudulent misrepresentation.   (*Id.* at Pg. ID 12-15, ¶¶ 57-78.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject matter jurisdiction.   "Rule 12(b)(1) motions to dismiss for lack of jurisdiction generally come in two varieties: a facial attack or a factual attack."   *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

A facial attack challenges the sufficiency of the pleading itself.   In that instance, the court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party.   *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)).

In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." *Id.* When a factual attack, also known as a "speaking motion," raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.* "[W]hen a defendant produces evidence challenging the factual existence of [subject matter jurisdiction], a plaintiff must generally prove [subject matter jurisdiction] with evidence, even at the motion-to-dismiss stage." *Harris v. Lexington-Fayette Urban Cty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (citing *Taylor v. KeyCorp.*, 680 F.3d 609, 613 (6th Cir. 2012); *Superior MRI Servs., Inc. v. All Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

Here, Plaintiffs contend that a court of law is the appropriate forum in which to settle this dispute. (*See* ECF No. 1.) Defendant argues that arbitration is the appropriate forum. (*See* ECF No. 8 at Pg. ID 57.) Thus, Defendant's motion is a factual attack questioning the factual existence of subject matter jurisdiction.

## APPLICABLE LAW & ANALYSIS

The Federal Arbitration Act ("FAA") reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). Under the FAA, a written agreement to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. But courts must not forget that "[a]rbitration under the [FAA] is a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Thus, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, [courts] [will] not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House, Inc*., 534 U.S. 279, 294 (2002); *see Bratt Enters., Inc. v. Noble Int'l Ltd*., 338 F.3d 609, 612 (6th Cir. 2003) ("The duty to arbitrate a dispute derives from the parties' agreement and a party cannot be required to submit to arbitration any dispute that the party has not agreed to so submit."). "In short, the federal presumption in favor of arbitration cannot be used as a means of rewriting the arbitration clause to encompass a dispute that the parties did not intend for arbitration and that the contract does not anticipate."

9

*Smith v. Altisource Sols.*, 726 F. App'x 384, 390 (6th Cir. 2018) (citing *Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 833 (6th Cir. 2015) (Clay, J., dissenting)).

Thus, "[p]rior to sending claims to arbitration, 'the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" *Matalka v. Home Point Fin. Corp.*, 753 F. App'x 372, 374-75 (6th Cir. 2018) (quoting *Javitch v. First Union Secs.*, 315 F.3d 619, 624 (6th Cir. 2003)). Because the parties in this case agree that the FAs contained valid arbitration provisions—and that the PAs did not—the Court need only answer whether Plaintiffs' claims regarding the PAs fall within the substantive scope of the FAs' arbitration provisions. *See id.* at 375 (citing *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 391 (6th Cir. 2008)). Defendant contends that they do, while Plaintiffs contend that they do not. (*See* ECF No. 8 at Pg. ID 70; ECF No. 12 at Pg. ID 359.)

"Generally, in determining whether a specific dispute falls within the scope of a valid arbitration provision, [the Sixth Circuit] ask[s] whether '[the] action could be maintained without reference to the contract or relationship at issue . . . .'" *Matalka*, 753 F. App'x at 375 (quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003)). "If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the

10

parties indicates otherwise." *Id.* (quoting *NCR Corp. v. Korala Assocs., Ltd*., 512

F.3d 807, 814 (6th Cir. 2008)).   "[The] question of whether and when an

arbitration clause in one contract encompasses a dispute arising out of a related

[contract]," as is the case here, "is less common in the [Sixth Circuit's] case law."

*Id.* (quoting *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503-04 (6th Cir.

2007)).   Still, "[the] analysis remains straightforward":   "[W]here [the] parties

have entered into multiple contracts as part of one overall transaction or ongoing

relationship . . . . [the Sixth Circuit] [has] adopted a more narrow test of

arbitrability, examining which agreement 'determines the scope of' the contested

obligations," *id.* (quoting *Nestle Waters*, 505 F.3d at 503-04), and "reject[ing] the

view that a dispute is arbitrable merely because it touches on matters covered by

the arbitration clause," *Dental Assocs., P.C. v. Am. Dental Partners of Mich., LLC*,

520 F. App'x 349, 351-52 (6th Cir. 2013) (quoting *Nestle Waters*, 505 F.3d at

504).

Here, Plaintiffs prevail under the narrower *Nestle Waters* test because the PAs

determine the scope of all contested obligations.   *See Matalka*, 753 F. App'x at

375 (applying *Nestle Waters* test in dispute regarding multiple contracts in an

ongoing relationship).   Plaintiffs' Complaint alleges that Defendant breached the

PAs and Amendments by failing to meet the Minimum Instructor Delivery

requirements, failing to follow the New Platform Rules, and fraudulently

misrepresenting that the terms of all other New Platform participants' participation agreements would not affect Defendant's ability to fulfill the commitments of Plaintiffs' PAs.  (*See* ECF No. 1 at Pg. ID 12-15, ¶¶ 57-78.)  And Defendant's obligation to meet the Minimum Instructor Delivery requirements, follow the New Platform Rules, and fulfill the commitments outlined in the PAs is, "commonsensically," in the PAs and Amendments—not in the FAs.  *Matalka*, 753 F. App'x at 375.  In other words, Plaintiffs do not at all question whether Defendant met the obligations outlined in the FAs.  Rather, Plaintiffs contend that Defendant failed to meet the substantive rights and duties outlined in the PAs. Accordingly, it is the PAs that determine the scope of the contested obligations.

Plaintiffs also prevail under the broader *Fazio* test because their action can be maintained without reference to the FAs or the parties ongoing franchisor-franchisee relationship.  *Id.* at 376 (applying *Fazio* test, as well as *Nestle Waters* test, in dispute regarding multiple contracts in an ongoing relationship).[3]  In *Matalka*, the defendant, a mortgage lender, entered into two contracts—a Branch

---

3 As the *Matalka* court explained, though the *Fazio* test is applied to "determine whether particular torts or challenges to the validity of the contract itself are within an arbitration clause," *Nestle Waters*, 505 F.3d at 504, "[the Sixth Circuit] ha[s] at times still applied the broader *Fazio* test where the parties have entered into multiple contracts."  *Matalka*, 753 F. App'x at 375-76 (citing *Dental Assocs*., 520 F. App'x 349).

Manager contract and subsequently a Regional Manager contract—with the

plaintiff, an individual with experience in the mortgage lending business.   753 F.

App'x at 373.   The Branch Manager contract contained an arbitration provision,

while the Regional Manager contract did not.   *Id.* at 374.   When concluding that

an action based on the Regional Manager contract could be maintained without

reference to Branch Manager contract, the Sixth Circuit explained:

> Plaintiff's breach of contract claim must describe "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." . . . . Accordingly, Plaintiff must describe the existence of the Regional Manager contract, his performance under the Regional Manager contract, Defendant's failure to pay pursuant to the Regional Manager contract, and damage or loss as a result of Defendant's breach. None of these require reference to the Branch Manager contract or Plaintiff's employment relationship with Defendant in that capacity.

*Id.* at 376 (internal citations omitted).   So is the case here.

To make out their breach of contract claims, Plaintiffs must describe (i) the

existence of the PAs; (ii) their performance pursuant to the PAs; (iii) Defendant's

failure to meet the Minimum Instructor Delivery requirements, follow the New

Platform Rules, and otherwise fulfill the commitments outlined in the PAs; and (iv)

damage or loss as a result of Defendant's breach.

To make out their fraudulent misrepresentation claims, Plaintiffs must allege

that (i) Defendant represented that the terms of all other New Platform

participation agreements would not affect Defendant's ability to fulfill the

commitments of Plaintiffs' PAs; (ii) this representation was false; (iii) Defendant

knew the representation was false at the time it was made, or Defendant made the

representation recklessly, without knowledge of its truth; (4) Defendant made it

with the intention that it should be acted upon by Plaintiffs; (5) Plaintiffs acted in

reliance upon the misrepresentation; and (6) Plaintiffs thereby suffered injury.   *See*

*Lawrence M. Clarke, Inc. v. Richco Constr., Inc.*, 803 N.W.2d 151, 162 (Mich.

2011).   None of the elements of either claim require reference to the FAs or the

parties' franchisor-franchisee relationship.   Indeed, the proper interpretation of the

PAs as they relate to the claims at bar can be determined without reference to the

FAs.   Notably, no party has suggested otherwise.

Defendant nonetheless points out that Section 16.3 of the FAs state that

"Franchisor and Franchisee each acknowledge and warrant to each other that they

wish to have all terms of their business relationship defined in this written

Agreement."   (Ex. C, ECF No. 8-4 at Pg. ID 241, ¶ 16.3; Ex. B, ECF No. 8-3 at

Pg. ID 135, ¶ 16.3.)   But Defendant's excerpt of Section 16.3 of the FAs omits

important language that follows immediately after:

> This Agreement, together with any other documents or
> agreements executed by the parties contemporaneously
> herewith, constitutes the entire agreement between the
> parties and contains all terms, conditions, rights and
> obligations of the parties with respect to any aspect of the

14

relationship between the parties.

(Ex. C, ECF No. 8-4 at Pg. ID 241, ¶ 16.3; Ex. B, ECF No. 8-3 at Pg. ID 135,

¶ 16.3.)   This language uses the modifying phrase "[t]his Agreement"—i.e., *the*

*FAs*—as well as the modifying phrase "any other documents or agreements

executed by the parties contemporaneously" to describe the contract that

"constitutes the entire agreement between the parties."   The fact that the parties

executed the PAs and Amendments years after the execution of the FAs, and not

"contemporaneously," suggests that the obligations outlined in the PAs are not

subject to the terms of the FAs.   Section 16.3 of the FAs further state:

> No change, modification amendment or waiver of any of
> the provisions hereof shall be effective and binding upon
> either party unless it is in writing, specifically identified as
> an amendment hereto and signed by the party to be charged.

(Ex. C, ECF No. 8-4 at Pg. ID 241, ¶ 16.3; Ex. B, ECF No. 8-3 at Pg. ID 135,

¶ 16.3.)   Nowhere in its briefs does Defendant suggest that the PAs were

"specifically identified as [] amendment[s]" to the FAs.   The language of Section

16.3 alone is sufficient to show that the PAs are not extensions of the contractual

obligations established by the FAs.

The conclusion that the instant claims are not arbitrable is further supported

by the intent of the parties as expressed by additional language in the FAs and PAs.

Per the FAs, Plaintiffs are required to submit to binding arbitration "any dispute

between [] Franchisor . . . and Franchisee . . . arising out of or relating to *this Agreement*."   (Ex. B, ECF No. 8-3 at Pg. ID 126, ¶ 11.2; Ex. C, ECF No. 8-4 at Pg. ID 232, ¶ 11.1 (emphasis added).)   "This agreement" includes the FAs—not the PAs—and this language demonstrates that the parties intended that the arbitration provisions of the FAs apply to the FAs in which they appear and not to the PAs.   *See Matalka*, 743 F. App'x at 377 (conducting same analysis based on similar contract language and reaching same conclusion).

Per the PA Amendments' "Integration Clause," "[the] Amendment constitutes the entire agreement between Franchisor and Franchisee concerning the subject matter [t]herein and supersedes and cancels all proposals and other written or oral agreements between the parties related to the subject matter set forth [t]herein." (Ex. B, ECF No. 11-2 at Pg. ID 330, ¶ 9; Ex. D, ECF No. 11-4 at Pg. ID 344, ¶ 9.) This Integration Clause diminishes Defendant's argument that the parties intended to place the subject matter of the PAs and the New Platform under the purview of the FAs and their arbitration clauses.   If the parties intended to subject this dispute to the arbitration provisions of the FAs, they could have easily and unequivocally done so by omitting this Integration Clause, and adding the arbitration clause to the PAs or labeling the PAs and/or its Amendments as an "amendment" to the FAs (as required by Section 16.3 of the FAs).   The parties, however, did not do any of these things.

Defendant argues that, because the PAs state that "[c]apitalized terms used but not otherwise defined shall have the meaning ascribed to them in the Franchise Agreement," the PAs "explicitly rely on and incorporate the [FAs]."   (ECF No. 8 at Pg. ID 69.)   As an initial matter, to suggest that the mere incorporation of the definitions contained in a separate contract amounts to incorporation of all *substantive* provisions contained in the separate contract strains the logical bounds of contract interpretation.   The Court further finds this argument unpersuasive because the PAs contain their own definitions for capitalized terms, with the single exception of "Extranet."   (*See* Ex. A, ECF No. 11-1 at Pg. ID 320, ¶ 2; Ex. C, ECF No. 11-3 at Pg. ID 334, ¶ 2.)   The fact that neither party suggests that Plaintiffs' claims turn—or even touch—on an interpretation of any capitalized terms (much less one that is not defined in the PAs) suggests that the PAs determine the scope of the contested obligations and Plaintiffs' action can be maintained without reference to the FAs.

Defendant further contends that "[b]reaches of certain terms of the [PAs] are specifically designated as grounds for termination of the Franchise Agreement," and "[t]he [PAs] are . . . in effect only as long as the [FAs]."   (ECF No. 8 at Pg. ID 69 (citing Ex. A, ECF No. 11-1 at Pg. ID 320, 322, §§ 1, 13; Ex. C, ECF No. 11-3 at Pg. ID 334-336, §§ 1, 12)).   It is unclear whether Defendant proffers these arguments to further support its contention that the PAs incorporated the terms and

conditions of the FAs.   If so, these arguments fail for the reasons discussed above.

Moreover, even if these specific PA provisions tangentially reference the FAs in

the manner Defendant describes, the PA provisions do not appear to relate to the

grounds for relief articulated in the Complaint and it does not appear that the Court

would have to reference the FAs in order to opine on Plaintiffs' PA-based breach

of contract and fraudulent misrepresentation claims.   *See Matralka*, 753 F. App'x

at 376 (finding that mention of the contract with arbitration clause in factual

background section of the complaint "does not relate to the stated grounds for

relief").   This reasoning further supports the conclusion that the PAs determine the

scope of all contested obligations and Plaintiffs' action can be maintained without

reference to the FAs.

Defendant further emphasizes that the parties had an ongoing franchisor-

franchisee relationship, arguing that (i) "the [C]omplaint goes out of its way to

stress the existence of the franchising relationship"; (ii) the parties "are identified

as 'Franchisor' and 'Franchisee'" throughout the PAs; and (iii) "[t]he Complaint is

clear that Plaintiffs' own virtual delivery programs (the "Global OLL" and its

predecessor) were formed by, and provided offerings exclusively to, New

Horizon's franchisees. . . . Thus, those programs—like the program created by the

[PAs]—would not have existed without the preexisting franchising relationships."

(ECF No. 8 at Pg. ID 68-69.)   Defendant, like the defendant in *Matalka*, asserts

18

that the FAs were "umbrella agreements" that established the franchisor-franchisee relationship between the parties and governed all future franchisor-franchisee contracts between them, making it likely that Plaintiffs' action must reference the FAs.   (ECF No. 13 at Pg. ID 684-85); *see also Matalka*, 743 F. App'x at 377. However, the FAs were not "umbrella agreements."   In *Nestle Waters*, on which Defendant heavily relies (*see* ECF No. 13 at Pg. ID 683-85), the parties entered into a purchase agreement that required the subsequent execution of a deed to certain subsurface property rights.   505 F.3d at 500, 505.   The purchase agreement contained an arbitration provision, while the subsequently executed deed did not.   *Id.* at 501.   The Sixth Circuit held that, though the action "arose primarily from the [d]eed," it "could not be [maintained] without reference to the [purchase agreement]."   *Id.* at 503, 505.   The Sixth Circuit went on to explain that "the purchase agreement was an 'umbrella agreement' that 'created the relationship between [the parties]' because the purchase agreement *required* the subsequent execution of several documents, including the deed, with forms for each 'attached to and made a part of the [purchase agreement].'"   *Matalka*, 753 F. App'x at 377-78 (quoting *Nestle Waters*, 505 F.3d at 505 (emphasis added)).   Here, the FAs "did not require, attach, make a part of, or refer in any way" to the PAs.   *Id.* at 378.   Thus, the facts—and outcome—of *Nestle Waters* is distinguishable.

Moreover, "even in cases involving umbrella agreements," the key question is

not whether a separate contract would exist absent a preexisting relationship.   *Id.*

at 377 (quoting *Dental Assocs.*, 520 F. App'x at 352).   Rather, the question under

*Nestle Waters* is which contract "'determines the scope of' the contested

obligations" and the question under *Fazio* is whether "[the] action can be

maintained without reference to the agreement containing the arbitration

provision."   *Id.* at 375, 377 (first quoting *Nestle Waters*, 505 F.3d at 503-04, then

quoting *Dental Assocs.*, 520 F. App'x at 352).   As discussed above, in this case,

the PAs determine the scope of the contested obligations and the action can be

maintained without reference to the FAs.

Finally, Defendant contends that the first recital of the PAs—"WHEREAS,

Franchisor and Franchisee are parties to multiple New Horizons Franchise

Agreements for various territories throughout the United States (collectively the

'Franchise Agreement [*sic*])"—"acknowledges that the [PAs] [are] extension[s] of

the franchise agreements."   (ECF No. 8 at Pg. ID 69.)   This recital does no such

thing.   Rather, it simply acknowledges the existence of a franchisor-franchisee

relationship.   And, as discussed above, the existence of a preexisting relationship

is not dispositive of whether a dispute falls within the scope of an arbitration

clause.

## CONCLUSION

In sum, the Court declines to compel arbitration of the above-captioned case

because the arbitration clause at bar does not apply to this dispute.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Compel Arbitration and

Dismiss or Stay (ECF No. 8) is **DENIED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: March 31, 2021